**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CASEY CRADDOCK and BILL MCGINNIS, ) | |
| ) | |
| Plaintiffs[1], ) | **CIVIL ACTION** |
| ) | |
| v. ) | Nos. 07-1336-MLB |
| ) | 07-1337-WEB |
| SEDGWICK COUNTY, KANSAS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' converted motion for summary judgment. (Docs. 6, 29). The motion has been fully briefed and is ripe for decision. (Docs. 7, 14, 27, 29, 30, 37, 43). Defendants' motion is granted for the reasons stated herein.

**I.   Facts[2] and Procedural History[3]**

On April, 23, 2005, plaintiffs visited Sedgwick County Park with members of a group from the Spirit One Christian Center. They were distributing Christian tracts and talking to individuals about the gospel of Jesus Christ. Plaintiffs were located across the drive from

---

[1] Initially, each plaintiff filed a separate complaint against defendants. See case no. 07-1337-WEB. The cases were consolidated by the court on February 22, 2008.

[2] All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007). To the extent relevant, the factual disagreements between the parties will be noted.

[3] This motion was initially filed as a motion to dismiss. (Doc. 6). The motion was converted to a motion for summary judgment by the court after plaintiffs attached affidavits to their response. (Docs. 14, 28). Plaintiffs filed a motion to amend their complaint which was granted. (Doc. 34). Both plaintiffs and defendants supplemented their briefing after the amended complaint was filed. (Docs. 37, 43).

the entrance to the Renaissance Festival that was taking place at the park.  Sedgwick County Deputy Bartowski approached plaintiffs and informed them that they were required to leave because the area had been leased by the Renaissance Festival.  Plaintiffs told Bartowski that they were outside of the Festival and in the public park area.  Bartowski again told them to leave and stated that they were trespassing.  Bartowski stated that if he determined that the group continued to hand out religious tracts that he would come to their church and take legal action against them.

   Bartowski informed plaintiffs and the group to move to the parking area at the north end of the park.  Plaintiffs and the group ceased their activities and returned to the parking lot on the north side of the park to retrieve their vehicles.  Bartowski approached plaintiffs with two additional sheriff's deputies.  Bartowski stated that the group failed to comply with his orders and plaintiffs were arrested for trespassing.  Plaintiffs were released from the Sedgwick County Jail at approximately 11:30 p.m. that evening.  They were informed that they were required to appear in court on May 9, 2005.  On May 9, plaintiffs went to the Sedgwick County Courthouse.  An unidentified judge informed plaintiffs that the prosecutors were not present but the matter had not been resolved.  Plaintiffs then attempted to speak with individuals at the Sedgwick County District Attorney's office. Plaintiffs were informed by unidentified employees that the county reserved the right to file, or refile, the charges at

any time.[4]  Plaintiffs were both fearful of being arrested again.

Plaintiffs consulted attorney James Spencer.  Spencer informed plaintiffs that the county had up to two years to bring charges against them for trespassing.  Spencer informed plaintiffs that he could not represent them but he would advise plaintiffs to wait and see what the county was going to do.  Plaintiffs assert that they delayed filing their action because they were fearful that they would be arrested and jailed again.

On April 23, 2007, plaintiffs' lawyer delivered a tort claim notice to the Sedgwick County Commission.  The notice stated, in pertinent part, that plaintiffs suffered damages as a result of their wrongful arrest.  Plaintiffs have since subsided from their normal religious activities, such as distributing literature, because they are afraid of a subsequent arrest.  On July 3, 2007, plaintiffs received notice from Sedgwick County that their tort claims were denied.  On July 5, 2007, plaintiffs filed this action.

Defendants move for summary judgment on the basis that plaintiffs' section 1983 claims are barred by the applicable statute of limitations.  Plaintiffs respond that the statute has been tolled.

**II.   SUMMARY JUDGMENT STANDARD**

---

[4] The court has noted these facts to provide background for plaintiffs' arguments regarding estoppel. The statements are hearsay, as noted by defendants (Doc. 27 at 2) and plaintiffs have never addressed their admissibility, even though they strongly rely on them. At the summary judgment stage, evidence need not be submitted in a form admissible at trial but the substance of the evidence must be admissible. Bryant v. Farmers Ins. Exchange, 432 F.3d 1114, 1122 (10th Cir. 2005). Under no circumstances would the court allow plaintiffs to testify at trial regarding statements allegedly made by an unidentified judge and similarly unidentified employees of the district attorney's office.

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**III. ANALYSIS**

    **A. Statute of Limitations**

In Kansas, an action brought under § 1983 is subject to a two-year statute of limitations. Brown v. Unified Sch. Dist. 501, 465 F.3d 1184, 1188 (10th Cir. 2006); Hamilton v. City of Overland Park, Kan., 730 F.2d 613, 614 (10th Cir. 1984) (stating that because Congress has not enacted a statute of limitations applicable to § 1983, all § 1983 claims should be characterized as actions for injury

to the rights of another and that Kansas' statute of limitations for such an action is two years); Kan. Stat. Ann. § 60-513(a)(4) (stating that an "action for injury to the rights of another" shall be brought within two years).

"[F]ederal law determines the accrual of section 1983 claims." Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995); see also Price v. Philpot, 420 F.3d 1158, 1162 (10th Cir. 2005) ("When a claim accrues, and thus when the limitations period begins to run, is a question of federal law."). The "running of the statute of limitations in a § 1983 action begins when the cause of action accrues, when 'facts that would support a cause of action are or should be apparent.'" Bedford v. Rivers, No. 98-6389, 1999 WL 288373, at *1 (10th Cir. 1999) (quoting Fratus, 49 F.3d at 675). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991).

Plaintiffs were arrested by Bartowski on April 23, 2005. Therefore, that is the date that plaintiffs' claims arose. Plaintiffs were required to file a complaint by April 23, 2007. They did not do so. Plaintiffs assert that the statute of limitations was tolled by one of two ways: 1) equitable estoppel; and 2) plaintiffs' filing of their K.S.A. 12-105b notice.

**1. Equitable Estoppel**

Under Kansas law, claims can be tolled by fraudulent concealment. Rockers v. Kansas Turnpike Authority, 268 Kan. 110, 116, 991 P.2d 889, 894-95 (1999). The doctrine of fraudulent concealment

-5-

is based on the theory of estoppel.  "A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed.  It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."  Id.  The affirmative act must be "designed to prevent, and which does prevent, discovery of the cause of action."  City of Wichita, Kan. v. U.S. Gypsum Co., 72 F.3d 1491, 1499 (10th Cir. 1996)(citing Baker v. Board of Regents, 991 F.2d 628, 633 (10th Cir. 1993) and Friends Univ. v. W.R. Grace & Co., 227 Kan. 559, 608 P.2d 936, 941 (1980)).  The facts establishing fraudulent concealment must be pled with particularity. King & King Enterprises v. Champlin Petroleum Co., 657 F.2d 1147, 1154 (10th Cir. 1981).  Moreover, "it must appear that the plaintiff did not have the means of detecting the fraud through reasonable diligence."  Ives v. McGannon, 37 Kan. App.2d 108, 115, 149 P.3d 880, 887 (2007); see also U.S. Gypsum Co., 72 F.3d at 1499.

Plaintiffs assert the following in their first amended complaint:

> Defendants, (a) by affirmative acts and statements, induced plaintiffs to believe certain facts existed; (b) upon which plaintiffs justifiably relied and acted; such that the false, unconstitutional, and inequitable conduct by defendants caused plaintiffs to delay the filing of their claims:
>
> a. Defendant Bartowski, a Sheriff's deputy, misstated the nature of the property and the ability of the Renaissance Festival to deny plaintiffs access to the property; including but not necessarily limited to Bartowski's statements that the Renaissance Festival owned or leased the property on which plaintiffs were standing, and that the Renaissance Festival personnel could direct Bartowski to remove plaintiffs from their

property;

    b. Deputy Bartowski wrongfully misrepresented the nature of plaintiffs' conduct by using his words, authority, uniform, and power of arrest to convince plaintiffs that they were trespassing, were guilty of criminal trespass; and were subject to criminal penalties, when, in fact, Bartowski's statements were not only factually and legally incorrect, but were unconstitutional;

    c. Deputy Bartowski wrongfully made affirmative threats to plaintiffs that he would come to their church and bring additional charges if he found further evidence of expressive activities by plaintiffs displeasing to Deputy Bartowski;

    d. Deputy Bartowski and other Sedgwick County officers wrongfully arrested plaintiffs, falsely advising plaintiffs that the arrest and handcuffing were because plaintiffs had committed criminal trespass (See ¶ 14, above);

    e. Sedgwick County officers jailed McGinnis and Craddock for over six hours, until the middle of the night, at which time they were released on a $500 bond at their "own recognizance", it being represented to plaintiffs by said officers that further misconduct by plaintiffs would result in the bond being revoked and the re-arrest of plaintiffs (See ¶ 15, above);

    f. Sedgwick County officers issued papers to plaintiffs wrongfully implying to plaintiffs that they had committed criminal trespass and were required to appear in court on May 9, 2005. (See ¶15, above)

    g. The Sedgwick County sheriffs department, having initiated false charges against plaintiffs failed to advise plaintiffs that the department had no intention of pursuing or following up on the charges;

    h. The Sedgwick County sheriffs department engaged in a wrongful pattern, practice and policy of and policy pattern, practice, and policy whereby Sedgwick County officers order persons engaged in protected activity such as that conducted by plaintiffs to move to a predetermined area away from public access, away from the public event in question, under threat of arrest for "trespass." If the persons targeted by this policy do not move to the designated holding area, they are arrested and detained, but then, typically, the arrestees are released and the County otherwise does not pursue the "trespassing" charges but leaves the arrest "hanging" as

> a threat to those who engage in unwanted expressive activity on county property (See ¶¶ 32, 33 above);
>
> i. Other employees and representatives of Sedgwick County, in the District Attorney's Office, further represented to plaintiffs words to the effect that, if plaintiffs did not drop the matter and rather pursued it or caused more trouble, further criminal action might be taken against plaintiffs;
>
> j. the representations by employees of the District Attorney's Office were representations by employees of Sedgwick County.

(Doc. 35 at 11-12).

Plaintiffs' allegations in paragraphs c, e, h, i and j, are not affirmative acts designed to prevent plaintiffs' discovery of a cause of action under section 1983. The remaining allegations essentially assert that the following affirmative fraudulent acts occurred: 1) Bartowski's statements in conjunction with the arrests; and, 2) unnamed Sedgwick County employees' statements to the affect that the charges could be reinstated. The latter cannot support the heightened pleading standard[5] because they do not amount to an affirmative act designed to prevent discovery of the cause of action. There is nothing in the record to suggest that even if the conversations took place, the employees were aware that plaintiffs were even contemplating a lawsuit.

Next, plaintiffs' assert that Bartowski's statements that plaintiffs were trespassing was an affirmative act that caused them to believe that they might have committed trespass and, therefore, did

---

[5] See note 4, <u>supra</u>.

not have a cause of action.[6]

In his affidavit, McGinnis states the following:[7]

> 15. Also, we did not know if we had grounds for a lawsuit, because Sedgwick County would not tell us if the case was over.  We thought we had to win the charges against us before we could file a lawsuit.  We were also afraid we did not have a case for a lawsuit because Bartowski told us the area was leased and we were trespassing, and because Sedgwick County charged us with criminal trespassing.  We were concerned that, if the area where we were arrested was leased and we had really committed trespassing, we probably did not have a case for countersuit.  The County's silence about whether the case was over, and statements by County officers that we had committed criminal trespass, caused us to further delay considering and filing a lawsuit.

(Doc. 43, exh. A at 4).

Plaintiffs' averments do not support an inference much less the conclusion that Bartowski's statements caused them to believe they did not have a cause of action against the county.  In paragraph 20 of their first amended complaint, plaintiffs state that they spoke with attorney James Spencer about a lawsuit against the county.  (Doc. 29, exh. 2 at 5).  If Bartowski's "wrongful statements" caused plaintiffs to believe that they had in fact committed trespass, then why would plaintiffs consult a private attorney about representation for a civil suit?  They provide no answer to this obvious question.  Moreover, at no point do plaintiffs explain how they determined that Bartowski's statements were false.

Plaintiffs contend that their claims did not "accrue" until over

---

[6] Plaintiffs have attached new affidavits to their supplemental briefing.  These affidavits are more colorful and include allegations of Deputy Bartkoski becoming angry and shouting at plaintiffs.  (Docs. 43, exhs. C, D).  These allegations do not have any bearing on the issue at hand.

[7] Craddock's affidavit is verbatim.  (Doc. 43, exh. B at 4).

-9-

two and one-half months after April 23, 2005 and that a jury should decide the accrual date. (Doc. 43 at 7-8). They do not specify what event triggered the accrual date but imply that it was not their arrest because they did not know at that time that their Constitutional rights had been violated. Plaintiffs apparently have not read their own pleadings and submissions. They make the observation that their complaint did not mention "false arrest." (Doc. 43 at 7). Both the complaint (Doc. 1, exh. A at 4) and amended complaint (Doc. 35 at 20) <u>do</u> mention false arrest, as does their claim letter. Turning to their assertion that they did not know their Constitutional rights, plaintiffs state that "when Craddock cited a court case which he thought showed that the group had a Constitutional right to minister in the park, the deputy became hostile." (Doc. 43 at 11). They go on to claim that at the time of their arrest, Bartowski stated: "I tried to be nice, but you guys wanted to quote the Constitution . . . So you were trying to tell me the law." (Doc. 43 ¶ 23). Assuming, for purposes of the motions, that Bartowski made these statements, plaintiffs believed, and expressed, at the time of their arrest, that their Constitutional rights were being violated. Thus, contrary to plaintiffs' arguments, there is no ". . . genuine issue. . . as to when plaintiffs should reasonably have known that their Constitutional rights had been violated. . . (Doc. 43 at 7).[8]

Moreover, plaintiffs have failed to allege that even by reasonable diligence they would not have discovered the supposed

---

[8] A reasonable inference from plaintiffs' version of the events is that they went to the park prepared (and perhaps hoping) for some sort of confrontation at which they would assert their views of their Constitutional rights.

-10-

falsity of Bartowski's statements.  Plaintiffs cite <u>Garcia v. City of Fullerton</u>, No. 771077, 2002 WL 1980690 (Cal. App. 4 Dist. Aug. 29, 2002), to support their position of reasonable diligence in this case. <u>Garcia</u>, however, is factually inapposite.  The plaintiff's husband in <u>Garcia</u> died due to a restraint police officers used while he was being transported to the hospital.  After his death, the police department refused to give the plaintiff the police reports and none of the reports made public by the news media had any information about the restraints.  The plaintiff contacted two attorneys and wrote a letter to the newspaper within three months after the accident to no avail. She kept persisting and finally found an attorney who was willing to assist her.  2002 WL 1980690 at *4.  In this case, plaintiffs contacted a single attorney after the arrest who said that he was unsure if they had actually committed trespass and that he would be unable to assist them with their case.  After that brief contact, plaintiffs sat on their rights for almost two years.  Plaintiffs have not established that they acted with reasonable diligence.

Finally, plaintiffs assert that they were justified in sitting on their rights because they were fearful of arrest.  In <u>Motor Equip. Co. v. McLaughin</u>, 156 Kan. 258 (1943), the court found that the doctrine of fraudulent concealment applied after the plaintiff was repeatedly threatened of arrest by the defendant.  In this case, plaintiffs were allegedly told at the time of their release from jail that if they caused any more trouble or stirred things up that they would be arrested again.  Plaintiffs cannot establish fraudulent concealment based on these allegations.  First, plaintiffs do not even

-11-

identify who made those statements.[9]  Second, plaintiffs fail to establish how this statement was made by officers in order to "prevent . . . discovery of the cause of action." City of Wichita, Kan., 72 F.3d at 1499.

The court finds that plaintiffs have failed to adequately allege defendants committed an affirmative act which caused them to delay filing the action; therefore, plaintiffs' section 1983 claims cannot be tolled under the doctrine of fraudulent concealment.[10]

### 2. Filing Plaintiffs' K.S.A. 12-105b Notice

Alternatively, plaintiffs assert that the filing of their K.S.A. 12-105b notice with the county tolled the statute of limitations on their section 1983 claims. K.S.A. 12-105b applies to "[a]ny person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act . . . ." The Tenth Circuit determined that the notice provision applied to state tort claims only and it could not be used to toll the statute of limitations for a section 1983 claim. Peoples v. Finney County Bd. of Com'rs, No. 94-3398, 1995 WL 326131, *2 (Kan. June 1, 1995)(citing Felder v. Casey, 487 U.S. 131 (1988)); see also Fira v. Board of County Comm'rs, Nos. 92-1548-MLB, 93-1008-MLB, 1994 WL 326719 (D. Kan. June 27, 1994).

Therefore, plaintiffs' section 1983 claims cannot be tolled by

---

[9] See note 4, supra.

[10] Plaintiffs' claims for injunctive and declaratory relief are also barred by the statute of limitations. Clulow v. State of Okl., 700 F.2d 1291, 1302 (10th Cir. 1983)("And since the plaintiff could have sought relief at law, the statute of limitations period is observed in equity.")

-12-

the filing of their section 12-105b notice. Plaintiffs' section 1983 claims are barred by the applicable statute of limitations.

### B.  State Law Claims

After dismissing all of plaintiffs' section 1983 claims, the only remaining claims are state law claims. The court may in its discretion decline to exercise jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). The court declines to adjudicate plaintiffs' state law claims.

### IV.  CONCLUSION

Defendants' converted motion for summary judgment (Doc. 6) is granted and the clerk shall enter judgment pursuant to Rule 58. This case is hereby remanded forthwith to the District Court of Sedgwick County, Kansas, for further proceedings.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   31st   day of July 2008, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE